## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION AT LEXINGTON

**ALLSTATE INSURANCE COMPANY, ALLSTATE LIFE INSURANCE COMPANY, and ALLSTATE FINANCIAL SERVICES, LLC,**

      **Plaintiffs,**

**V.**

**KEVIN ZEEFE and SANDRA ZEEFE,**

      **Defendants.**

**CIVIL ACTION NO. 5:15-159-KKC**

**MEMORANDUM OPINION AND ORDER**

      This matter is before the Court on Plaintiffs Allstate Insurance Company, Allstate Life Insurance Company, and Allstate Financial Services, LLC's ("Plaintiffs" or "Allstate") Motion to Dismiss Defendants Kevin and Sandra Zeefe's Counterclaims. (DE 43). For the reasons set forth below the Court will grant Plaintiffs' motion to dismiss.

### I. BACKGROUND[1]

      On May 28, 2015, Allstate filed a complaint with this Court alleging that Defendants breached their contracts, misappropriated trade secrets, and tortiously interfered with Allstate's client relationships. Allstate sought injunctive and compensatory relief. (DE 1.) The complaint alleges that the Zeefes each entered into independent contractor agreements with Allstate that included non-compete and non-disclosure provisions. Allstate claims that Kevin Zeefe began violating the non-compete agreements before he voluntarily terminated their relationship on August 8, 2014, by selling competitor's products. (DE 1 at 2.) Sandra Zeefe allegedly aided Kevin's subsequent violations, and violated her own non-compete and confidentiality obligations, by providing him Allstate customer information and scheduling

---

[1] The facts are recited in the light most favorable to the Defendants.

appointments for him to sell competing products. (DE 1 at 2–3.) Allstate terminated Sandra's agreement on May 22, 2015, after which she was obligated to return all confidential customer information. (DE 1 at 3) She purportedly failed to do so. After considering Allstate's representations, this Court issued a Temporary Restraining Order enjoining the Zeefes from further use or disclosure of Allstate's confidential information, and requiring them to protect and maintain such information and post a $2,500 bond pending further proceedings. (DE 12.)

On August 3. 2015, the Zeefes submitted counterclaims that are the subject of the instant motion to dismiss. First, the Zeefes allege wrongful termination and discriminatory retaliation following Kevin's filing a disability claim with an Allstate subsidiary, American Heritage Life ("AHL"), on November 1, 2012. (DE 32 at 2.) Benefits were paid under the AHL policy for one year, but were denied thereafter. (DE 32 at 2.) AHL subsequently terminated Kevin's license to sell their products, which Kevin Zeefe claims "effectively denied him the opportunity to earn a living." (DE 32 at 2.) This conduct purportedly violated state wrongful discharge law, as well as state and federal anti-retaliation laws. 42 U.S.C. § 2000e-3; KRS §§ 344.200, .280(1).

Second, the Zeefes claim discrimination and retaliation in violation of their rights to freely exercise their religion after Allstate denied their request to close their offices for Jewish holy days. (DE 32 at 3–4.) The Zeefes allege that, contrary to their purported status as independent contractors, Allstate exercised significant control over their agents including setting dates their agencies are required to be open for business. (DE 32 at 3.) In March of 2013, after Allstate was advised these dates only permitted closing for Christian holidays, the Zeefes claim they were instructed to hire a non-Jewish employee to keep their business open on Jewish holidays, or risk their Agency Agreements with Allstate. (DE 32.)

2

Allstate's denial allegedly violated state and federal religious freedom protections and led to the retaliatory termination of Kevin's AHL license in violation of state and federal anti-retaliation laws. 42 U.S.C. § 2000e-3; KRS §§ 344.040(1), .280(1).

Third, the Zeefes claim that Allstate impermissibly retaliated against Kevin because he reported his colleague's illegal activity to Allstate and, after Allstate advised him to ignore it, to the Kentucky Department of Insurance. (DE 32 at 5.) In May of 2014, Kevin Zeefe discovered another agent was personally paying certain clients' unpaid premiums. (DE 32 at 5.) The Zeefes represent that his subsequent reports are "whistle blower activity," protected by the Sarbanes-Oxley Act. 18 U.S.C. § 1514A(a). As such, they claim that termination of Kevin's AHL license and the filing of this lawsuit were prohibited retaliation under the Sarbanes-Oxley and Dodd-Frank Acts. *Id.*; 15 U.S.C. §§ 78u–6(h)(1)(A)(i), (iii).

The Zeefes' final counterclaim seeks recovery for libel. They represent that Allstate's filings with this Court and its reports of the conduct alleged in the original complaint to the Kentucky and Ohio Departments of Insurance, and the Financial Industry National Regulatory Authority ("FINRA") "are libelous per se in that they are injurious to the[ir] professional reputations." (DE 32 at 7.)

Allstate now moves for dismissal of all four counterclaims. This Court finds (1) that the Zeefes' Title VII, Sarbanes-Oxley, and their state law discrimination and retaliation claims are barred by statutes of limitations, (2) that they have not alleged facts sufficient to state a prima facie claim under Dodd-Frank, (3) and that Allstate's statements in quasi-judicial proceedings are privileged. Consequently, none of the counterclaims (DE 32) state a claim upon which relief could be granted and they will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

3

## II. ANALYSIS

### A. STANDARD OF REVIEW

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2] The court must construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true, but the factual allegations must "raise a right to relief above the speculative level." *Id.* at 555. The complaint must "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (internal quotation marks omitted). Failure to include plausible factual allegations for all material elements necessary for recovery warrants dismissal. *Id.*

### B. STATUTES OF LIMITATIONS

Defendants' claim Plaintiffs' violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3, the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, the Dodd-Frank Act, 15 U.S.C. §§ 78u–6(h)(1)(A)(i), (iii), and corresponding provisions of the Kentucky Civil Rights Act ("KCRA"). KRS §§ 344.040(1), .200, .280(1). Each of these Acts creates a statute of limitations for filing charges, whether with the courts, or with the administrative agencies charged with enforcing their provisions. *See* 42 U.S.C.A. § 2000e-5(e)(1) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice

---

[2] Plaintiffs' have also sought dismissal under Rule 12(b)(1), alleging this Court lacks jurisdiction to hear Defendants' unexhausted counterclaims. However, absent express congressional intent to the contrary, exhaustion is not a prerequisite to this Court's exercising jurisdiction. *See Zipes v. Trans World Airlines, Inc.* 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").

with respect to which the person aggrieved has initially instituted proceedings with a State or local agency[.]"); 18 U.S.C. § 1514A(b)(2)(D) ("An action under paragraph (1) shall be commenced not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation."); 15 U.S.C. § 78u–6(h)(1)(B)(iii) ("An action under this subsection may not be brought . . . more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the employee alleging a violation of subparagraph (A)."); KRS § 344.200 (For all "unlawful practices" under the KCRA "[t]he complaint must be filed within one hundred eighty (180) days after the alleged unlawful practice occurs."). Generally, the same analysis applies to discrimination claims under Title VII and the KCRA. *See Jefferson Cnty. v. Zaring*, 91 S.W.3d 583, 590 (Ky. 2002). Failure to file such charges within the statutory time limits, absent good cause shown, bars any claim based on alleged conduct outside that time frame. *See e.g., United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554–55 (1977) ("respondent . . . did not initiate any proceedings of her own . . . by filing a charge with the EEOC within 90 days of her separation. A claim based on that discriminatory act is therefore barred."). Similarly under Sarbanes-Oxley—though case law on the more recent Act is sparser—both the Department of Labor and the Ninth Circuit agree that actions falling outside the relevant limitations period are time barred. *Coppinger-Martin v. Solis*, 627 F.3d 745, 749 (9th Cir. 2010) ("A plaintiff seeking whistleblower protection under SOX must first file an administrative complaint with OSHA . . . 'not later than 90 days after the date on which the violation occurs'[.]") (quoting 29 C.F.R. § 1980.103(c)).

Only Plaintiff's Dodd-Frank claims survive the relevant statutes of limitations. From the face of the counter-claims, it is clear the latest possible date that the Zeefes' claims could have accrued was August 8, 2014—the day Kevin Zeefe voluntarily terminated

5

his employment. (DE 32 at 6.) Although the alleged retaliation for Kevin's May 2014 report to the Kentucky Department of Insurance began "within months," the latest conceivable date of accrual could be no later than Kevin's last day of employment. (DE 32 at 5.) This is the latest act that the counter-claims allege was made against either of the Zeefes as employees of Allstate and was tied to any discriminatory or retaliatory animus. The termination of Kevin's license to sell Allstate's subsidiary products occurred well before his discharge. (DE 32 at 2.) The purported religious discrimination occurred in March of 2013. (DE 4.) Nor could the whistleblower retaliation claim have accrued when Sandra's contract was terminated because the complaint does not allege that she was a whistleblower.

Dodd-Frank's allowance of claims for up to three years following the alleged violation is the only limitations period from the relevant acts greater than 180 days. A statute of limitations defense, while not normally part of a motion to dismiss for failure to state a claim, "is appropriate where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). Thus, the Zeefes' Title VII, Sarbanes-Oxley, and KCRA claims are barred by their failure to file until well after February 4, 2015, the latest possible deadline. *Banko v. Apple Inc.*, 20 F. Supp. 3d 749, 754 (N.D. Cal. 2013) ("While Banko has not met the requirements of Sarbanes–Oxley, he is well-within the . . . limitations period provided by Dodd–Frank. Although [both] claims involve Sarbanes–Oxley . . . [t]he first claim for relief is brought under Dodd–Frank, which creates a private right of action for violations of Sarbanes–Oxley. Therefore, it is timely.").

6

## C. DODD-FRANK CLAIMS

Allstate disputes the Zeefes' entitlement to relief under Dodd-Frank without first filing with the Securities and Exchange Commission ("SEC"). (DE 44 n.1.) On its face, 15 U.S.C. § 78u–6(h) only provides a cause of action for "whistleblowers," which the act defines as an individual or individuals who report a violation to the SEC. 15 U.S.C. § 78u–6(a)(6). Thus, the Zeefes' failure to file with the SEC indisputably extinguishes any retaliation claim under § 78u–6(h)(1)(A)(i) for reports made pursuant to Dodd-Frank. However, Dodd-Frank also "created a private right of action allowing employees who believe they have been retaliated against for engaging in protected activity under [Sarbanes-Oxley] to file suit directly in federal court." *Rhinehimer v. U.S. Bancorp Investments, Inc.*, 787 F.3d 797, 805 (6th Cir. 2015). Circuit Courts are split as to whether § 78u–6(h)(1)(A)(iii) requires filing with the SEC, or if there is sufficient statutory ambiguity to defer to the SEC's determination that reports "to persons or governmental authorities *other than the Commission*" will suffice. *Berman v. Neo@Ogilvy LLC*, No. 14-4626, 2015 WL 5254916, at *3 (2d Cir. Sept. 10, 2015) (quoting Securities Whistleblower Incentives and Protections, Release No. 34–64545, 76 Fed.Reg. 34300–01, at *34304 (June 13, 2011)) (emphasis in original). *But see Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 623 (5th Cir. 2013) ("we hold that the plain language of the Dodd–Frank whistleblower-protection provision creates a private cause of action only for individuals who provide information relating to a violation of the securities laws to the SEC."). This Circuit has not yet weighed in on this narrow issue, nor is it necessary for this Court to do so now. As set forth more fully below, the Zeefes' Dodd-Frank counterclaim is insufficient on its face.

Counterclaim 3 alleges only whistleblowing activity by Kevin Zeefe, so only the adverse actions related to *his* employment are relevant to this Court's analysis. (DE 31 at

5.) To state a prima facie claim for retaliation as a Sarbanes-Oxley whistleblower Kevin Zeefe must allege "that (1) he engaged in protected activity; (2) the employer knew or suspected, either actually or constructively, that he engaged in the protected activity; (3) he suffered an unfavorable personnel or employment action; and (4) the protected activity was a contributing factor in the unfavorable action." *Rhinehimer*, 787 F.3d at 805. The sufficiency of the counterclaim as to the first two elements is not disputed. Allstate argues that dismissal is warranted both because the counterclaim fails to allege any adverse action actually taken by Allstate, as opposed to its subsidiaries, and also because there are no facts from which this Court could infer a causal connection between the alleged whistleblowing and any adverse employment action. (DE 44 at 9–12.) Even viewing the facts in the light most favorable to the Zeefes, this Court must conclude that Counterclaim 3 has not stated a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Counterclaim alleges two instances of whistleblowing and accompanying adverse actions. However, Kevin Zeefe cannot rely on his April 2015 report to the Financial Industry National Regulatory Authority ("FINRA") as "whistleblowing" because his working relationship with Allstate ended nearly a year prior. *See* 18 U.S.C. § 1514A(a) ("No company . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the *employee*[.]") (emphasis added).[3] The second alleged whistleblowing incident warrants further analysis.

---

[3] A similar rationale excludes the filing of this lawsuit from consideration. Clearly this was not an adverse *employment* action because by the time the suit was filed the Zeefes were no longer employed by Allstate. Additionally, even if the April 2015 report could suffice to designate Zeefe as a whistleblower, no causal connection could be established between that action and the termination of his AHL license because that adverse action occurred before the report.

In May of 2014, Kevin Zeefe learned that his colleague was using personal funds to pay unpaid client premiums, artificially increasing the total premiums he appeared to have generated. (DE 32 at 5.) Kevin claims to have reported this conduct to Allstate and—after Allstate instructed him to ignore the activity—to the Kentucky Department of Insurance. (DE 32 at 5.) Kevin points to the loss of "exclusive agency agreements" as a retaliatory adverse employment action. (DE 32 at 6.) Presumably, this refers to the "license to sell American Heritage Life insurance" that Zeefe alternatively claims was terminated as retaliation for his disputing a disability claim, (DE 32 at 2), a presumption warranted by Zeefe's admission that he voluntarily terminated his only other agency agreement with Allstate. (DE 1 at 60; DE 30 at 3.) However, the Zeefes cannot recover for this course of conduct because the adverse action occurred *before* the alleged whistleblowing.

This Court takes judicial notice of the fact that Kevin Zeefe's license with American Heritage Life Insurance was terminated on July 12, 2013. (DE 54-3.) Generally, a Rule 12(b)(6) motion must be decided on the basis of the complaint alone; however, courts "may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).On September 1, 2015, Kevin Zeefe filed a complaint against AHL with the Woodford County Circuit Court, which clarifies that the above date applies to the termination referenced in the Counterclaim under consideration. (DE 54-3 at 2.) Because Kevin Zeefe's whistleblowing occurred in May of 2014, well after the July 12, 2013, license termination, that adverse action cannot have been in response to Zeefe's report. Zeefe has not alleged facts tending to show the causal nexus necessary to create a plausible claim for retaliation under Dodd-Frank and, thus, this claim will be dismissed.

9

**D. COUNTERCLAIM 4 – LIBEL**

The Zeefes' final claim alleges libel based on the representations Allstate has made both before this Court, and also before "various state and federal regulatory agencies." (DE 32 at 7.) However, as Allstate points out, "statements made preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding and that have some relation to a proceeding that is contemplated in good faith and under serious consideration are absolutely privileged." *Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 184 (Ky. Ct. App. 2014) (internal quotation marks omitted). The privilege also extends to statements made in quasi-judicial proceedings. *Morgan & Pottinger, Attorneys, P.S.C. v. Botts*, 348 S.W.3d 599, 602 (Ky. 2011), *as modified on denial of reh'g* (Oct. 27, 2011) ("Judicial proceedings include all proceedings in which an officer or tribunal exercises judicial functions."). The Texas Court of Appeals has aptly summarized why:

> [T]he rationale for extending the absolute privilege to statements made during quasi-judicial proceedings rests in the public policy that every citizen should have the unqualified right to appeal to governmental agencies for redress without the fear of being called to answer in damages and that the administration of justice will be better served if witnesses are not deterred by the threat of lawsuits.

*5-State Helicopters, Inc. v. Cox*, 146 S.W.3d 254, 257 (Tex. App. 2004).

Moreover, the Zeefes entirely ignored Allstate's privilege argument in their response to this motion. (DE 52 at 7.) The Zeefes' "failure to oppose [counter-]defendants' motions to dismiss" the Libel claim indicates that any responsive "arguments have been waived." *Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008). Thus, Allstate's statements in judicial and quasi-judicial proceedings are absolutely privileged

and the Zeefes libel claim based on this conduct is not one upon which relief could be granted.

## III. CONCLUSION

This Court cannot decide the propriety of the majority of Allstate's alleged conduct. Little of this holding addresses whether the Zeefes made compelling claims because they simply waited too long to make them. If the Zeefes felt their rights were violated at the times they allege, they should have sought to enforce those rights, not sit on them. The animating purpose behind requiring timely pursuit of such actions is long established:

> Statutes of limitation . . . are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.

*Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944). The basis for administrative filing requirements is no less compelling. *See, e.g., Mohasco Corp. v. Silver*, 447 U.S. 807, 820 (1980) ("the [statute of limitations] represented a judgment that most genuine claims of discrimination would be promptly asserted and that the costs associated with processing and defending stale or dormant claims outweigh the federal interest in guaranteeing a remedy to every victim of discrimination."). These principles amply support this Court's dismissal of the majority of the Zeefes' counterclaims as stale. Because their remaining claims were not bolstered by facts sufficient to "nudge[ ] [them] across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

11

Accordingly, **IT IS ORDERED** as follows:

1.   Plaintiffs' Motion to Dismiss Defendants' Verified Counterclaims (DE 43) is **GRANTED**;

2.   Defendants' Verified Counterclaims (DE 32) are **DISMISSED WITH PREJUDICE**;

3.   Defendants' Motion for Oral Argument (DE 53) is **DENIED AS MOOT**; and

4.   Having taken judicial notice of the sole relevant fact from the tendered reply, Plaintiff's Motion for Leave to File a Sur-Reply (DE 54) is **DENIED AS MOOT**.

Dated March 17, 2016.

*Karen K. Caldwell*

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

12